# IN THE COURT OF APPEALS OF IOWA

No. 23-0496
Filed May 10, 2023

**IN THE INTEREST OF S.C.,**
**Minor Child,**

**M.C., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Story County, Stephen A. Owen, District Associate Judge.

        A mother appeals the termination of her parental relationship with her four-year-old son.  **AFFIRMED.**

        Daniela Matasovic of Matasovic Law Firm, Ames, for appellant mother.

        Brenna Bird, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

        Shannon M. Leighty, Nevada, attorney and guardian ad litem for minor child.

        Considered by Bower, C.J., and Tabor and Greer, JJ.

**TABOR, Judge.**

A mother, McKenzie, appeals the order terminating her parental relationship with four-year-old S.C. She challenges all three steps in the termination analysis.[1] First, she argues that the State failed to offer clear and convincing proof of a ground for termination. Second, she contends that termination was not in her son's best interests. And third, she urges that termination would harm S.C. because of the closeness of the parent-child relationship. After our independent review, we reach the same conclusions as the juvenile court and affirm the termination order.[2]

In May 2022, the court approved a request from the Iowa Department of Health and Human Services to remove S.C. from McKenzie's custody. While caring for her then three-year-old son, McKenzie had been using methamphetamine and passed out. McKenzie also acknowledged locking S.C. in his room.[3] One month after his removal, McKenzie obtained a substance-abuse evaluation in which she admitted daily methamphetamine use.[4] After that

---

[1] *See In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021) (identifying our three-step termination process that includes: (1) review of the statutory grounds for termination, (2) the child's best interests, (3) and permissive exceptions to termination).

[2] We review termination decisions de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We will uphold an order when there is clear and convincing evidence of the statutory grounds for termination. *In re T.S.*, 868 N.W.2d 425, 434 (Iowa Ct. App. 2015). We give careful consideration to the juvenile court's factual findings and in-person observations, but we are not bound by them. *See In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021). Our top priority is the child's best interests. *See In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (identifying safety and the need for a permanent home as the "defining elements" in the best-interests determination).

[3] The department placed S.C. in the care of a relative, and McKenzie agreed to his adjudication as a child in need of assistance (CINA).

[4] At the termination hearing, she denied making that admission. But she did concede abusing methamphetamine since she was sixteen years old. McKenzie was twenty-three at the time of the hearing.

evaluation, she started extensive outpatient treatment. But McKenzie unsuccessfully discharged from that program in October 2022. She did not reengage with treatment until February 2023, about a week before the termination hearing.

McKenzie also experienced housing instability. She was evicted from her residence in Colo in August 2022. She then moved in with her boyfriend's mother in Des Moines and later with her boyfriend's grandmother in Griswold—about two hours from S.C.'s placement. McKenzie testified that these moves and transportation problems contributed to her difficulties in accessing services and attending visits with S.C.[5]

The juvenile court described her "record of visitation" as "abysmal"—noting that she attended only twenty of fifty-four sessions offered with her son. According to the service provider, it was "really hard" on S.C. when she missed visits. Meanwhile S.C. has lived with his maternal grandmother since July 2022. And he is "very comfortable" in that placement, according to the social worker.

The juvenile court held a permanency hearing in November 2022, granting McKenzie more time to seek substance-abuse services and improve her engagement with visitation. When that didn't happen, the State petitioned to terminate her parental rights the following February.[6] After a hearing that March, the court granted the petition. The court found grounds for termination under Iowa Code section 232.116(1) (2023) paragraphs (e) and (*l*). McKenzie now appeals.

---

[5] On a brighter note, McKenzie was fairly consistent with mental-health treatment.
[6] The State also petitioned to terminate the rights of S.C.'s father. He is not a party to this appeal.

**Grounds for Termination**. At the termination hearing, McKenzie asked the juvenile court to delay permanency for six more months to allow her "some extra time to work on issues." But in this appeal, she contests the grounds for termination.[7] To affirm, we need only find sufficient proof of one ground. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We focus on paragraph (e).

To terminate under that section, the State must show: (1) S.C. had been adjudicated as a CINA under section 232.96; (2) he was removed from McKenzie's physical custody for at least six straight months; and (3) there is clear and convincing evidence that she has not maintained significant and meaningful contact with him during the previous six months and has made no reasonable efforts to resume care despite getting a chance to do so.[8] Iowa Code § 232.116(1)(e). McKenzie contests element (3), claiming that she did maintain significant and meaningful contact with S.C.

Like the juvenile court, we find clear and convincing evidence that McKenzie shirked her parental duties. Not only did she miss more than half of the offered visits with her son, but the service provider reported that when McKenzie did attend, she only focused on S.C. for about half of the two-hour visit. What's more,

---

[7] Her petition on appeal challenges termination under paragraphs (e), (h), and (*l*), but the court based its decision only on paragraphs (e) and (*l*).

[8] "Significant and meaningful contact" includes but is not limited to the "affirmative assumption by the parents of the duties encompassed by the role of being a parent." Iowa Code § 232.116(1)(e)(3).

> This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and requires that the parents establish and maintain a place of importance in the child's life.

*Id.*

she did not make a genuine effort to fulfill the goals of the case permanency plan—especially when it came to addressing her methamphetamine addiction. When we perform a "qualitative analysis of her efforts" to meet the duties of parenting S.C., we find a lack of reasonable efforts to resume care. *See T.S.*, 868 N.W.2d at 438.

**Best Interests**. McKenzie's petition on appeal cites the best-interests framework in section 232.116(2), but does not analyze those factors. Instead, she makes this admission: "While it may very well have been in best interests of the child to remain in the care of his maternal grandmother, the termination of the mother's parental rights was the most restrictive means for this end to be achieved." She then shifts to an argument for delaying permanency, or alternatively, a guardianship with the grandmother.

Neither of those options is best for S.C. We may allow another six-months for reunification only if the need for removal will be resolved after that extension. *See In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021) (discussing Iowa Code section 232.104(2)(b)). But McKenzie made little progress during the time she had after the permanency hearing. At the termination hearing, she testified:

> I want to prove that I can finish my substance abuse courses, going to my visits every week, and complying with everything the Department is asking of me. I know in the past I've had some things come up and I've had to deal with it, and now I'm focused and ready and willing to be able to do it as needed.

While heartfelt, her aspirations do not make up for lost time. She needed to take action when S.C. was removed from her care. And a guardianship for this four-year-old child will leave too much uncertainty about his future. *See In re A.S.*, 906 N.W.2d 467, 478 (Iowa 2018). Like the juvenile court, we find that S.C.'s safety and long-term nurturing and growth are best ensured by termination and

continued placement with his grandmother for adoption. *See* Iowa Code § 232.116(2).

**Permissive Exception**. Finally, McKenzie contends that she presented clear and convincing proof that termination would harm S.C. because of the closeness of their relationship. *See* Iowa Code § 232.116(3)(c). The record does not support her contention. The social worker testified that McKenzie's bond with S.C. was "currently estranged" because of the inconsistency of her visits. And the service provider testified that S.C. looks to his grandmother for his needs, even calling her "mom" at times. No doubt, McKenzie was truthful in testifying to her love for S.C. But she did not show that they maintained the kind of bond that would prompt a court to save the parent-child relationship under section 232.116(3)(c).

Because all three steps in the analysis point toward terminating McKenzie's parental rights, we affirm.

**AFFIRMED.**